UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEW CINGULAR WIRELESS PCS, LLC d/b/a AT&T Mobility,<br><br>Plaintiff,<br><br>v.<br><br>THE VILLAGE OF OYSTER BAY COVE, THE ZONING BOARD OF APPEALS OF THE VILLAGE OF OYSTER BAY COVE, AND THE PLANNING BOARD OF THE VILLAGE OF OYSTER BAY COVE.<br><br>Defendants. | Civil No. 2:22-cv-07807<br><br>**COMPLAINT** |

Plaintiff New Cingular Wireless PCS, LLC d/b/a AT&T Mobility, by way of Complaint against the Village of Oyster Bay Cove, the Zoning Board of Appeals of the Village of Oyster Bay Cove, and the Planning Board of the Village of Oyster Bay Cove (collectively, "Defendants"), hereby says:

**PARTIES**

1. Plaintiff New Cingular Wireless PCS, LLC d/b/a AT&T Mobility ("AT&T") is a Delaware Limited Liability Company with its principal place of business at 1025 Lenox Park Boulevard NE, Atlanta, Georgia 30319.

2. Upon information and belief, Defendant Village of Oyster Bay Cove ("Village") is a local government entity or instrumentality thereof duly constituted and

established pursuant to New York law and having an office at 68 West Main Street, Oyster Bay, NY, 11771.

3. Upon information and belief, Defendant the Zoning Board of Appeals of the Village of Oyster Bay Cove ("Zoning Board") is a local government entity or instrumentality thereof duly constituted and established pursuant to New York law and having an office at 68 West Main Street, Oyster Bay, NY, 11771.

4. Upon information and belief, Defendant the Planning Board of the Village of Oyster Bay Cove ("Planning Board") is a local government entity or instrumentality thereof duly constituted and established pursuant to New York law and having an office at 68 West Main Street, Oyster Bay, NY, 11771.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as AT&T is asserting a claim arising under federal law, more particularly, 47 U.S.C. § 332(c)(7), enacted as part of the Telecommunications Act of 1996 (the "TCA").

6. This Court has supplemental jurisdiction over all other claims herein, pursuant to 28 U.S.C. § 1367, as those claims form part of the same case or controversy and are related to AT&T's claims under the TCA.

7. Venue is proper in this District under 28 U.S.C. § 1391(b), as the Defendants reside or may be found in this District, the property that is the subject of this action is located in this District, and the acts or omissions giving rise to this action occurred in this District.

8. Expedited review of this action is required pursuant to 47 U.S.C. § 332(c)(7)(B)(v).

## FACTUAL BACKGROUND

<u>The Need for Reliable Access to AT&T's Services</u>

9. AT&T is a provider of wireless services ("services") pursuant to licenses issued by the Federal Communications Commission (the "FCC").

10. AT&T provides services through an interlocking network of line-of-sight transceiver facilities ("wireless services facilities") that permit the efficient reuse of frequencies allocated to AT&T by the FCC.

11. The radio signals used by AT&T to provide services are subject to disruption caused by topography, foliage, and man-made structures, as well as range limitations inherent in the use of low-powered signals that permit frequency reuse.

12. Reliable access to 911 and Enhanced 911 (E911) services by means of wireless devices is a particularly important public safety consideration given that 70% of 911 calls are made from wireless devices, and over half of households nationally no longer utilize landline telephone service.

13. Further accentuating the public safety significance of consistent and reliable access to AT&T's services, a portion of the frequencies licensed to AT&T are used to support FirstNet, a national public safety broadband network for first responders created pursuant to a statutorily and congressionally mandated public-private partnership between AT&T and the First Responder Network Authority.

14. Because of the need for reliable backup power to ensure availability of FirstNet service, an outdoor distributed antenna system ("ODAS") is not a suitable means to provide coverage to an area for FirstNet.

The Unreasonably Protracted Application Process

15. There is an area in the Village, including property along and adjacent to a 1.14 mile stretch of Rt. 25A, and extending roughly 0.4 miles on either side of Berry Hill Road adjacent to, and south of, Rt. 25A, where AT&T is unable to provide reliable access to services from its network (the "service gap").

16. The service gap is significant in terms of size, number of persons affected, and degree of service deficiencies.

17. The absence of a wireless services facility capable of providing reliable services to the service gap materially impairs AT&T's ability to engage in a variety of activities related to its provision of services covered by its FCC licenses.

18. There are no existing structures in the area of sufficient height to host an AT&T facility that would remedy the service gap.

19. Construction of a wireless services facility at the Village's Police Department headquarters at 30 Northern Boulevard, Oyster Bay, New York, 11771 (the "Site"), would permit AT&T to remedy the service gap.

20. The Site is municipal property located in the center of the service gap in an area otherwise consisting of single-family residential properties.

21. AT&T prepared plans to locate at the Site a "stealth" wireless services facility within a 900 square foot fenced area behind a storage facility at the rear of the

Site that would consist of equipment cabinets and a monopole with simulated pine branch camouflage (a "monopine"), with a total height, including camouflage branches, of approximately 85 feet above ground level ("AGL"), with antennas at a centerline height of 75 feet AGL (the "Proposed Facility").

22. The Village Board of Trustees, in conjunction with its consultant, approved the design of the monopine at the Proposed Facility.

23. On or about November 16, 2021, the Board of Trustees adopted a resolution authorizing the Village to enter into a lease with AT&T (the "Lease"), which was then executed on December 22, 2020, permitting AT&T to construct, operate and maintain the Proposed Facility.

24. The Lease provides that AT&T's use of the Site is contingent on obtaining all governmental approvals necessary to construct, operate, and maintain the Proposed Facility (the "Government Approvals").

25. Under Village Code §§ 320-3, 4, 28(A), the Proposed Facility is a permitted use with a Special Use Permit from the Village Board of Trustees.

26. Under Village Code § 320-32 and Village Code § 320-38, the Village has expressed a preference to site wireless facilities on municipal property and has exempted facilities on municipal property, such as the Proposed Facility, from the requirement to obtain a special use permit under Village Code §§ 320-3, 4, 28(A).

27. Under Village Code § 264-3, the Proposed Facility requires site plan approval from the Planning Board.

28. Under Village Code § 264-12, the Proposed Facility requires certain variances from the Zoning Board.

29. Under Village Code § 320-40, the Proposed Facility requires a building permit from the Village Building Inspector.

30. On December 6, 2021, AT&T submitted an application for the necessary approvals (the "Application").

31. The Application included a narrative explaining the factual and legal grounds supporting approval of both the Application and a site plan of the Proposed Facility.

32. The Application included a structural analysis and engineering letter documenting that the Proposed Facility would meet or exceed all applicable structural requirements.

33. The Application included a zoning, planning, and visual impact analysis documenting the minimal impact of the Proposed Facility.

34. The Application included an affidavit from a radio frequency engineer documenting the existence and delineation of the service gap and that the Proposed Facility would remedy it.

35. The Application included a certification of compliance with FCC regulations.

36. The Application included confirmation that the Proposed Facility did not require registration with the Federal Aviation Administration.

37. The Application included a Long Environmental Assessment Form and supporting information documenting that the Proposed Facility would not have a significant adverse environmental impact pursuant to the State Environmental Quality Review Act ("SEQRA").

38. The Application included a building permit application.

39. The filing of the Application commenced the running of the "Shot Clock" under 47 C.F.R. § 1.6003(c), (e), which defines the reasonable time within which all Defendants were required to render their decision on the Application within 150 days, or by May 6, 2022.

40. Under 47 C.F.R. § 1.6003, Defendants had until January 5, 2022 to toll the Shot Clock by requesting additional information they contended was necessary to complete the Application.

41. On January 6, 2022, Defendants requested supplementation and clarification of certain materials in the Application.

42. Without waiving its rights under the Shot Clock, AT&T responded to Defendants' information request on March 18, 2022.

43. By letter, dated May 4, 2022, AT&T and Defendants agreed to extend the Shot Clock through June 6, 2022.

44. By letter, dated June 27, 2022, AT&T and Defendants agreed to extend the Shot Clock through August 31, 2022.

45. On August 4, 2022, the Planning Board held its first hearing on the Application.

46. On August 16, 2022, the Zoning Board held its first hearing on the Application.

47. By letter, dated August 30, 2022, AT&T and Defendants agreed to extend the Shot Clock through October 6, 2022. AT&T and Defendants subsequently agreed in writing to extend the Shot Clock through November 23, 2022.

48. On October 6, 2022, the Planning Board held its second hearing on the Application.

49. On November 22, 2022, the Zoning Board held its second hearing on the Application.

50. At its November 22, 2022 hearing, the Zoning Board voted to deny the Application.

51. While the Zoning Board has not yet issued a written denial of the Application or a statement of reasons, at the November 22, 2022 hearing, the Zoning Board summarized its reasons for denial as its belief that there was inadequate proof of need for the Proposed Facility, that the Proposed Facility would result in insufficient benefit to justify the resulting adverse impacts, and concern that approval of the Proposed Facility would "set a precedent" by permitting a facility that would not also resolve a large gap to the northeast of the Proposed Facility.

52. The Planning Board has not acted on the Application.

53. The hearing record on the Application does not contain substantial evidence that AT&T currently provides reliable service in the service gap.

54. Rather, the hearing record contains credible evidence that there is a 1.14 mile stretch of Rt. 25A to the east of the Proposed Facility within which there is insufficient signal strength for an in-vehicle user to have reliable access to AT&T's network, including FirstNet.

55. The hearing record also contains credible evidence that the area within the 1.14 mile stretch of Rt. 25A to the east of the Proposed Facility is an area within which there is insufficient signal strength for an in-vehicle user to have reliable access to AT&T's network, including FirstNet.

56. In addition, the hearing record contains credible evidence that there is an area within a 0.4 mile radius of the Proposed Facility within which there is insufficient signal strength for an in-building user to have reliable access to AT&T's network, including FirstNet.

57. The hearing record on the Application does not contain substantial evidence of the existence of any viable, available, less intrusive, or more feasible alternate means to remedy the service gap.

58. Rather, the hearing on the Application does not contain substantial evidence that the Proposed Facility would not be minimally intrusive.

59. The hearing record on the Application also contains credible evidence that the Proposed Facility could not be seen from most vantage points in the surrounding facility.

60. In addition, the hearing record on the Application contains credible evidence that from the limited vantage points from which it would be visible, the

Proposed Facility's pine tree camouflage would make it visually unobtrusive among the other pine trees and tall deciduous trees on the Site.

61. The hearing record on the Application does not contain substantial evidence that ODAS would be a viable alternative to remedy the service gap, given the inadequacy of ODAS to provide reliable in-building service to structures set back from roads and the lack of sufficient backup power sources, particularly for FirstNet.

### Count I

62. AT&T incorporates the paragraphs set forth above as if set forth at length herein.

63. Under 47 U.S.C. § 332(c)(7)(B)(ii), the TCA requires zoning, land use, and other state or local permitting decisions relating to wireless facility siting requests to be rendered within a reasonable period of time.

64. The TCA provides that for an application for a new stand-alone facility, the presumed reasonable period of time to render a decision is within 150 days after submission of the application for that facility, unless extended by consent. 47 C.F.R. § 1.6003(c)(1)(iv).

65. The last extension of the Shot Clock for the Application herein expired on November 23, 2022.

66. The Zoning Board did not adopt and issue a written denial of the Application prior to November 23, 2022.

67. The Planning Board did not take even take a vote on the Application prior to November 23, 2022.

68. The Zoning Board and the Planning Board each failed to take required action on the Application within a reasonable period of time, or prior to expiration of the Shot Clock in violation of their duty under 47 U.S.C. § 332(c)(7)(B)(ii).

## Count II

69. AT&T incorporates the paragraphs set forth above as if set forth at length herein.

70. 47 U.S.C. § 332(c)(7)(B)(i)(II) and 47 U.S.C. § 253(a) prohibit denial of an application for a facility where denial of that application would prohibit or have the effect of prohibiting the provision of covered services.

71. In its *Declaratory Ruling,* the FCC, pursuant to legislative authority, definitively interpreted 47 U.S.C. § 332(c)(7)(B)(i)(II) and 47 U.S.C. § 253(a) to provide that "an effective prohibition occurs where a state or local legal requirement materially inhibits a provider's ability to engage in any of a variety of activities related to its provision of a covered service. This test is met not only when filling a coverage gap but also when densifying a wireless network, introducing new services or otherwise improving service capabilities." *Declaratory Ruling* at ¶ 37.

72. The failure to approve the Proposed Facility materially inhibits AT&T's activities related to its provision of covered services, as it has prohibited AT&T's ability to permit its customers in the service gap to access covered services consistently and reliably. In addition, the ability of first responders to access FirstNet services is also compromised.

73. Given the extent of Rt. 25A, a major road, which lacks reliable in-vehicle service, and the area surrounding the Proposed Facility which lacks reliable in-building service, the service gap is significant.

74. AT&T made a good faith effort to identify and evaluate less intrusive alternatives to remedy a significant service gap.

75. The Proposed Facility is the least intrusive means of providing consistent and reliable access to AT&T customers and FirstNet users in the service gap.

76. Under 47 U.S.C. § 332(c)(7)(B)(i)(II) and 47 U.S.C. § 253(a), Defendants' actions have the effect of prohibiting the provision of covered services in the area intended to be served.

## Count III

77. AT&T incorporates the paragraphs set forth above as if set forth at length herein.

78. 47 U.S.C. § 332(c)(7)(B)(iii) requires that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."

79. Under New York law, AT&T, as a provider of wireless services seeking approval of the Proposed Facility, is entitled to the same zoning preference enjoyed by public utilities and need only establish that there is a service gap, that the location of the Proposed Facility will remedy that service gap, and that the needs of the broader

12

public would be served by approval of the Proposed Facility as a more feasible means of providing service than available alternatives.

80. The written record of the proceedings before the Zoning Board establishes the existence of the service gap in the area to be served by the Proposed Facility, that the Proposed Facility would remedy that service gap, and that the needs of the broader public would be served by approval of the Proposed Facility as a more feasible means of providing service than available alternatives.

81. To the extent required by law, the written record of the proceedings before the Zoning Board also establishes that the Proposed Facility is minimally intrusive and is the most feasible means of remedying the service gap.

82. The record does not contain substantial evidence supporting the Zoning Board's denial of the site plan application for the Proposed Facility.

### Count IV

83. The Proposed Facility complies with all applicable requirements of the Town Code, other than a modest increase in height to maximize the effectiveness of the monopine camouflage, and a *de minimis* modification of dimensional requirements.

84. Failure to approve the Proposed Facility in a timely manner was arbitrary, capricious, unreasonable, and an abuse of discretion in violation of State law including, but not limited to, CPLR Article 78.

**WHEREFORE**, Plaintiff AT&T requests judgment against the Defendants as follows:

A. Expedited disposition of this action pursuant to 47 U.S.C. § 332(c)(7)(B)(v);

B. Entry of an Order directing Defendants to grant all variances, permits, and approvals necessary to allow construction, operation, and maintenance of the Proposed Facility for violation of 47 U.S.C. § 332(c)(7)(B)(ii);

C. Entry of an Order directing Defendants to grant all variances, permits, and approvals necessary to allow construction, operation, and maintenance of the Proposed Facility for violation of 47 U.S.C. § 332(c)(7)(B)(i) (II) and 47 U.S.C. § 253(a);

D. Entry of an Order directing Defendants to grant all variances, permits, and approvals necessary to allow construction, operation, and maintenance of the Proposed Facility for violation of 47 U.S.C. § 332(c)(7)(B)(iii);

E. Entry of an Order directing Defendants to grant all variances, permits, and approvals necessary to allow construction, operation, and maintenance of the proposed facility for violation of New York Town Law § 274-b(6), New York Village Law § 7-725-a(8), and New York Civil Practice Law & Rules § 7801 *et seq.*; and

F. Such other relief as this Court may deem equitable and just.

Respectfully submitted,

By: */s/ Andrew B. Joseph*
Andrew B. Joseph
FAEGRE DRINKER BIDDLE & REATH LLP
1177 Avenue of the Americas, 41st Floor
New York, NY 10036-2714
Tel.: (212) 248-3148
Fax: (212) 248-3141
Andrew.Joseph@faegredrinker.com